*Formatted for Electronic Distribution*                                           *Not for Publication*

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF VERMONT

| | | |
|---|---|---|
| **In re:**<br>    **LISA MAYO,**<br>        **Debtor.** | | Chapter 7 Case<br># 03-10114 |
| **LISA MAYO,**<br>    **Plaintiff,**<br>v.<br>**UNION BANK,**<br>    **Defendant.** | Filed & Entered<br>On Docket<br>03/17/05 | Adversary Proceeding<br># 04-1018 |

*Appearances:*  Bernard D. Lambek, Esq.                    Anthony B. Lamb, Esq.
                Montpelier, Vt.                            Burlington, Vt.
                *For the Debtor -Plaintiff*                *For the Defendant*

### MEMORANDUM OF DECISION
### DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

In her Complaint, Lisa Mayo (the "Plaintiff") alleges that the her former employer, Union Bank, N.A. ("Union Bank") discriminated against her, in violation of § 525(b)[1], because it terminated her position as branch supervisor based upon her representation that she intended to file for bankruptcy relief (doc. #1). On December 27, 2004, the Plaintiff moved for summary judgment on this ground as well as Union Bank's allegedly discriminatory conduct in refusing to re-hire the Plaintiff after she filed her bankruptcy case (doc. # 31).[2] On January 19, 2005, Union Bank filed a memorandum in opposition to the Plaintiff's motion for summary judgment (doc. # 40). The Court finds that, based upon the record before it, the Plaintiff has not demonstrated that Union Bank discriminated against her or that she is entitled to judgment as a matter of law. Accordingly, the Court denies the Plaintiff's motion for summary judgment.

The Court has jurisdiction over the Plaintiff's motion for summary judgment under 28 U.S.C. §§ 157(b) (1).

---

[1] Unless otherwise indicated, all statutory references are to Title 11 U.S.C. (the United States Bankruptcy Code).

[2] While the Plaintiff's Complaint does not assert a cause of action that Union Bank discriminated by refusing to re-hire the Plaintiff after she filed for bankruptcy, Union Bank has not objected to the Plaintiff's motion for summary judgment on this ground as outside the scope of the Complaint. Further, Union Bank responds to the Plaintiff's claim in its response. Consequently, the Court will address the Plaintiff's claim on the allegation that Union Bank discriminated against the Plaintiff by refusing to re-hire her after she filed bankruptcy, even though it is beyond the scope of the Complaint.

1

## BACKGROUND FACTS

The pertinent facts are not in dispute. Union Bank employed the Plaintiff from March 1995 until March 28, 2002.[3] The Plaintiff began working for Union Bank as a part-time "teller I" at an hourly wage of $6.50 and when she resigned, she was "branch supervisor" earning $11.50 per hour plus full benefits.[4] In early 2002, when the Plaintiff's credit card debt had reached $35,000 and it became impossible for her to meet her monthly debt service obligations, she sought the advice of a bankruptcy attorney.[5] That attorney required a $100 deposit for the initial consultation and an additional $900 retainer, prior to filing the bankruptcy case, to cover the cost of representing her in the case and the filing fee.[6]

Union Bank's policy manual in effect in March 2002 provided as follows:

> There is a high level of financial integrity, which the Bank must maintain that requires each of us to be above criticism in the handling of our own private financial affairs. Employees are expected to manage their personal finances responsibly. This includes the proper handling of personal bank accounts as well. The Bank considers frequent instances of checks or charges presented against insufficient funds and kiting as examples of irresponsible handling of your personal accounts. Unacceptable handling includes the above examples, but is not limited to those examples and may include any other activity that the bank deems to be unacceptable. The Bank reviews employee deposit accounts on a regular basis as part of our security procedure.

See Exhibit A to Plaintiff's Motion, pp. 1-2. Because of this policy, the Plaintiff decided to disclose to Union Bank's Human Resource Manager, Donna Russo,[7] that she was planning to file for bankruptcy relief.[8] On or about March 8, 2002, the Plaintiff told Ms. Russo of her financial difficulties and that she intended to file bankruptcy.[9] The Plaintiff's primary reason for talking with Ms. Russo was to find out whether she would be able to continue in her position as branch supervisor under the mandates of Union Bank's policy.[10] On or about March 11, 2002, Ms. Russo told the Plaintiff that she would not be able to retain her current position as branch supervisor but that other positions might be available for her at Union

---

[3] Plaintiff's Motion for Summary Judgment, ¶ 4.

[4] Id.

[5] Id. at ¶ 5.

[6] Id. at ¶ 6.

[7] There is inconsistency in the spelling of Ms. Russo's last name in the record before the Court. However, to avoid confusion, the Court will use the spelling as it appears on Ms. Russo's deposition transcript, attached to the Defendant's Opposition as Exhibit A.

[8] Plaintiff's Motion for Summary Judgment, at ¶ 7.

[9] Id. at ¶ 8; Defendant's Opposition, ¶ 1.

[10] Plaintiff's Motion for Summary Judgment, ¶ 7.

2

Bank.[11] Although Ms. Russo was not aware of any available positions at that time, she assured the Plaintiff that she would look into it further and encouraged the Plaintiff to contact Cynthia Borck, Union Bank's executive vice president, if she had any further questions.[12] The parties do not dispute that the Plaintiff was told she could not retain her position as branch supervisor shortly after she disclosed her intent to file bankruptcy. However, the record is a bit unclear as to whether this decision by the bank was based upon the bank's policy about personal finances or the Plaintiff's disclosure of her intent to file for bankruptcy relief. Based upon the record before the Court, it appears that Union Bank does not dispute that the Plaintiff's disclosure of her intent to file bankruptcy was the impetus for a bank employee informing the Plaintiff that she would not be able to continue in her position as branch supervisor.

While the parties dispute the exact substance of the conversations between the Plaintiff and Ms. Borck, it is undisputed that Ms. Borck told the Plaintiff she could not retain her position as branch supervisor with Union Bank, and that there might be another position available for her.[13] The parties are in dispute, however, about whether the Plaintiff was ever told that Union Bank expected her to resign. According to the Plaintiff, Ms. Borck told the Plaintiff that Union Bank expected her to resign.[14] Ms. Borck denies that she ever said this.[15] The Plaintiff understood that any alternate position that would be offered to her would involve less responsibility and could be considered a demotion by her co-workers. The Plaintiff claims that she did not wish to suffer the public humiliation of a demotion so she decided to resign.[16] Although Ms. Borck testified that the Plaintiff could be moved to a position which did not involve the handling cash or interaction with the public, at no time between March 11 and March 28, 2002 did Union Bank identify any specific positions that might be available to the Plaintiff.[17]

On March 13, 2002, prior to the Plaintiff receiving any further information from the bank about what position(s) might be available to her at Union Bank, the Plaintiff submitted her resignation letter to Ms. Russo, citing that she had "chosen not to be transferred to another department."[18] The Plaintiff's last

---

[11] Id. at ¶ 9.

[12] Id.

[13] Id. at ¶¶ 8-9; See also, Complaint (doc. #1) ¶ 12; Defendant's Opposition, Exhibit A, Deposition of Ms Russo, p. 39.

[14] Plaintiff's Motion for Summary Judgment, Exhibit A, ¶ 10.

[15] Id. at Exhibit F, p. 14 ("I did not tell her she would have to resign or suggest that she would have to resign. I totally disagree with that statement. We did discuss moving her to another position within the bank.").

[16] Id. at Exhibit A, ¶ 11.

[17] Defendant's Opposition, Exhibit A, Deposition of Ms Russo, p. 39; Plaintiff's Motion for Summary Judgment, ¶¶ 8, 9, and 10.

[18] Plaintiff's Motion for Summary Judgment, Exhibit B.

3

day of work was March 28, 2002, approximately two weeks after she submitted her resignation letter.[19] As of her last day with Union Bank, the Plaintiff was still employed as a branch supervisor.[20] During her exit interview, the Plaintiff informed Ms. Russo that she had decided not to file bankruptcy after all.[21]

The Plaintiff ultimately filed for bankruptcy relief on January 27, 2003.[22]

In May 2004, the Plaintiff applied for new employment with Union Bank.[23] In connection with applications for employment, it is Union Bank's policy to request a consumer reporting agency to prepare a consumer report which will be used in determining whether the individual is eligible for employment.[24] In accordance with that policy, Union Bank requires that applicants sign a "Consumer Report Disclosure and Authorization" form which contains the following language:

> I authorize Union Bank to obtain such a report and release Union Bank from any liability with obtaining such a report and/or taking any adverse action, based in whole or in part, on the consumer report. [25]

When she applied for re-employment, the Plaintiff struck through all the language except "I authorize Union Bank to obtain such a report."[26] Because Union Bank was not willing to deviate from its standard hiring practices and the Plaintiff was not willing to sign the form without striking through certain language, the Plaintiff was denied employment.[27] The Plaintiff claims that Union Bank's denial of employment in May 2004 also constitutes discrimination prohibited by § 525.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper only if the record shows that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. See FED. R. CIV. P. 56(c); FED. R. BANKR. P. 7056. A genuine issue exists only when "the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Celotex Corp. v. Catrett, 477 U.S. 317 (1986). The substantive law will identify

---

[19] Id. at ¶ 4.

[20] Id.

[21] Defendant's Opposition, Exhibit A, Deposition of Ms Russo, p. 62.

[22] The Plaintiff attributes the delay between her initial advice from a bankruptcy practitioner in March 2002 and her filing to the costs associated with filing for bankruptcy and her inability to pay the attendant costs.

[23] Plaintiff's Motion for Summary Judgment, Exhibit C.

[24] Id., Exhibit D.

[25] Id., Exhibit C.

[26] Id.

[27] Id. Exhibit D.

4

which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. See Anderson, 477 U.S. at 247. Factual disputes that are irrelevant or unnecessary are not material. See id. The court must view all the evidence in the light most favorable to the nonmoving party and draw all inferences in the nonmovant's favor. See Cruden v. Bank of New York, 957 F.2d 961, 975 (2d Cir. 1992). In making its determination, the court's sole function is to determine whether there is any material dispute of fact that requires a trial. See Anderson, 477 U.S. at 249; see also Palmieri v. Lynch, 392 F.3d 73, 82 (2d Cir. 2004); Delaware & Hudson Ry. Co. v. Conrail, 902 F.2d 174, 178 (2d Cir. 1990).

## DISCUSSION

The Court finds that there are no material facts in dispute with respect to the arguments Plaintiff asserts as grounds for summary judgment.[28] The Plaintiff claims that Union Bank wrongfully removed her from her position as branch supervisor. However, up until the Plaintiff's last day of employment, her title was branch supervisor. Although the Plaintiff voluntarily resigned within two (2) days of her conversation with Ms. Borck,[29] the Plaintiff strenuously argues that she is not asserting that she was constructively discharged. Rather, the Plaintiff's contention is that Union Bank discriminated against her "by terminating her employment as branch supervisor on the ground of her insolvency and imminent bankruptcy filing." See Plaintiff's Reply, at ¶ 4 (doc. # 41).[30] Therefore, the Court will address the legal arguments, on the narrow questions of whether Union Bank terminated the Plaintiff's employment as branch supervisor, and if so, (a) whether the bank's conduct was based upon the Plaintiff's insolvency and her disclosure of an intent to file bankruptcy, and (b) whether this constitutes discrimination under § 525. The Court finds that Union Bank never terminated the Plaintiff's employment as branch supervisor and therefore that the bank did not violate § 525.

### A. Timing of the Debtor's Bankruptcy Filing

There is a threshold question of whether § 525 applies where the alleged discriminatory conduct occurs prior to a bankruptcy filing. The parties' papers present vigorous arguments about the significance of the timing of the Plaintiff's bankruptcy filing and whether a person who anticipates filing bankruptcy

---

[28] The Plaintiff's Motion for Summary Judgment and the Defendant's Opposition do not parallel one another with respect to the parties' version of the undisputed facts. Further, the summary judgment evidence attached to the Plaintiff's Motion for Summary Judgment is inherently inconsistent with other allegations made. For instance, the Plaintiff's Affidavit states that Ms. Borck told her Union Bank expected her to resign. Exhibit A at ¶ 10. However, in Exhibit F, Ms. Borck denies the conversation ever took place. After scrutinizing the summary judgment evidence, the Court finds that there are no facts in dispute that are material to the asserted grounds for summary judgment.

[29] Plaintiff's Motion for Summary Judgment, Exhibit A, ¶ 10.

[30] In the event the Plaintiff were claiming she was constructively discharged, summary judgment would be precluded based upon the existence of a genuine issue of material fact.

5

but has not yet done so, may invoke the protections of § 525.[31] Union Bank argues that at the time of the allegedly discriminatory conduct, namely, when the bank officials informed the Plaintiff that she was no longer eligible to work as a branch supervisor, the Plaintiff was not and had not been a debtor under the Bankruptcy Code, and thus, the Plaintiff's claim is not actionable under § 525(b). The Court is not persuaded by this argument. Instead, this Court finds the reasoning set forth by Judge Reinhardt in his dissent in Leonard v. St. Rose Dominican Hosp. (In re Majewski), 310 F.3d 653, 656 (9th Cir. 2002), to be sound and consistent with the legislative intent of § 525. Judge Reinhardt clearly articulated the rationale for applying § 525 to conduct which appears to discriminate on the basis of a bankruptcy filing, regardless of whether the party has already filed or merely discloses she or he is about to file.

> Individual employees have the same right to seek bankruptcy protection as large corporations – and Congress has determined that they should be able to do so without fear of losing their livelihood as a result. Section 525(b) was enacted to protect the Majewskis of the world from the sort of direct retaliatory discrimination encountered here, and to ensure that individuals are able to receive the same fresh start as some of our less deserving corporate predators. A worker like [the debtor] should not be stripped of his rights either because his employer succeeds in firing him before he can get his papers on file in bankruptcy court, or because this court is afraid of encouraging him to avail himself of a remedy that Congress intended would be available to him. The majority's unduly narrow construction of the Bankruptcy Code unjustly undoes an important part of the protections that Congress intended to offer working people.

Id. at 664. This Court agrees with this analysis and holds that acts based upon the threat or disclosure of a bankruptcy filing may be grounds for a cause of action under § 525. However, the Court need not analyze the timing of the Plaintiff's bankruptcy filing *vis a vis* the allegedly discriminatory conduct in this instance because the Court finds that the record before it does not reveal any conduct by Union Bank that constitutes discriminatory conduct under § 525.[32] While the record reveals that Union Bank suggested it was about to engage in conduct that might constitute discrimination under § 525, it had not actually taken any action or made any decision as to what action it would take in light of the Plaintiff's disclosure. The Plaintiff's resignation letter preempted any possible adverse employment action that she believed was

---

[31] Section 525 (b) provides: "No private employer may terminate the employment of, or discriminate with respect to employment against, an individual **who is or has been a debtor under this title**, a debtor or bankrupt under the Bankruptcy Act, or an individual associated with such debtor or bankrupt, solely because such debtor or bankrupt--
    (1) is or has been a debtor under this title or a debtor or bankrupt under the Bankruptcy Act;
    (2) has been insolvent before the commencement of a case under this title or during the case but before the grant or denial of a discharge; or
    (3) has not paid a debt that is dischargeable in a case under this title or that was discharged under the Bankruptcy Act. (Emphasis added).

[32] The Court recognizes that as a banking institution, Union Bank has many responsibilities under banking regulations and its unique trust position with its customers. Nonetheless, the Court does not find that Union Bank's policies or actions are exempt from the protections afforded a debtor under § 525.

6

looming – and may well have occurred – if she had continued her employment at Union Bank. The Court understands the Debtor's desire to avoid what she perceived would be an embarrassing demotion, but relief cannot be granted based upon speculation about what might have happened. If the Plaintiff had stayed in her position as branch supervisor and ultimately suffered discriminatory termination of her employment, then she would have had a right to damages under § 525. Given the facts presented, the Plaintiff has no basis for relief.

### B. Termination of Employment

The Plaintiff claims that the Bank discriminated against her in violation of § 525(b) by terminating her employment as branch supervisor.[33] However, as noted above, Union Bank did not terminate the Plaintiff's employment as branch supervisor, rather, the Plaintiff voluntarily resigned from Union Bank. The Plaintiff argues that the position of branch supervisor was no longer available to her. However, the summary evidence is insufficient to establish this. As noted above, there is a dispute as to whether any bank representative told the Plaintiff that Union Bank expected her to resign. What is undisputed is that Union Bank threatened to remove her from the branch supervisor position. Significantly, there is no evidence that Union Bank ever threatened to fire her [34] and up until her last day of work, the Plaintiff was a branch supervisor at Union Bank. Union Bank took no action and made no decision as to what position, if any, the Plaintiff might have had with Union Bank if she had not resigned. Since the Court finds that Union Bank did not terminate the Plaintiff's employment as branch supervisor, it must deny the Plaintiff's motion for summary judgment on this ground.

### C. Subsequent Application for Employment

The Plaintiff applied for re-employment with Union Bank in May 2004 (the "Plaintiff's Employment Application"). The Plaintiff argues that Union Bank continued to discriminate against her by not reinstating her to her former position as branch supervisor solely because she was a debtor in bankruptcy. However, the Plaintiff's position is inconsistent with the undisputed facts. As the Plaintiff recognizes in her statement of undisputed facts, Union Bank denied the Plaintiff's Employment Application for the stated reason that the Plaintiff would not release Union Bank from liability as requested.[35] There is no evidence before the Court that this stated reason was disingenuous.

The Plaintiff seems to be arguing that Union Bank knew that her credit history would disclose her bankruptcy filing and discharge and infers that this is why Union Bank did not hire her. The Plaintiff

---

[33] The Plaintiff's Complaint includes a claim for wrongful discharge, yet the Plaintiff's Motion for Summary Judgment does not request relief on that ground.

[34] Defendant's Opposition, Exhibit A, Deposition of Ms. Russo, p. 45.; Plaintiff's Motion for Summary Judgment, ¶ 9-10.

[35] Plaintiff's Motion for Summary Judgment, ¶ 16.

7

asserts that Union Bank's denial of the Plaintiff's Employment Application constitutes discrimination under § 525. The Plaintiff's inference is not supported by the summary judgment evidence. There is no evidence that Union Bank denied the Plaintiff employment because of her bankruptcy filing, or that Union Bank was even aware of the Plaintiff's bankruptcy case. In fact, the record reflects that during her exit interview, several months earlier, the Plaintiff had informed Union Bank representatives that she had decided not to file bankruptcy.[36] There is nothing in the record to establish that Union Bank knew that the Plaintiff had filed for bankruptcy nearly ten months after she resigned.

The summary judgment evidence compels a finding that Union Bank denied the Plaintiff's employment application solely on the basis that she would not sign the requisite application form without striking some of its terms. Therefore, there is no basis for a determination that Union Bank's refusal to re-hire the Plaintiff constitutes discrimination under § 525. Accordingly, the Plaintiff's motion for summary judgment in connection with the re-hiring cause of action is denied.

## CONCLUSION

The summary judgment record reveals no material facts subject to a genuine dispute. As a preliminary matter, the Court finds that the fact that a debtor has not yet filed for bankruptcy relief does not preclude the application of § 525. Based upon the undisputed facts before it, the Court finds that the Plaintiff is not entitled to judgment as a matter of law on her termination cause of action or her refusal to re-hire cause of action. The record does not demonstrate that Union Bank terminated the Plaintiff's position as a branch supervisor or that Union Bank based its decision not to rehire her based upon her bankruptcy filing. Accordingly, the Plaintiff's Motion for Summary Judgment is denied in all respects.

This constitutes the Court's findings of fact and conclusions of law. The Court shall enter a separate order scheduling a final pre-trial conference and setting a date for a trial on the merits.

March 17, 2005  
Rutland, Vermont

Colleen A. Brown  
United States Bankruptcy Judge

---

[36] Defendant's Opposition, Exhibit A, Deposition of Ms Russo, p. 62.

8